IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENNY L. STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 C 7472 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| INTERNATIONAL ALLIANCE OF ) | |
| THEATRICAL STAGE EMPLOYEES ) | |
| UNION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendants' motion for summary judgment [94]. For the reasons set forth below, the motion is granted.

## BACKGROUND[1]

Benny Stewart worked as a freelance producer, technical director, and audiovisual technician. (Defs.' Mem. Ex. A Stewart Dep. at 122-23.) In 1998 he began getting work assignments from the International Alliance of Theatrical Stage Employees Union Local No. 2 (the "Union"). (*Id*. at 124-25.) In 2007, he joined the Union as a journeyman member. (*Id*. at 15.) Stewart testified at his deposition that in this case he is alleging that the Union retaliated against him for filing complaints with the Illinois Department of Human Rights ("IDHR") and the National Labor Relations Board ("NLRB") and that the Union also violated the Labor

---

[1] Many of plaintiff's responses to defendants' statement of material facts fail to comply with L.R. 56.1(b)(3)(B) and do not properly dispute defendants' statements because they either do not cite evidence in support of the dispute, the cited material does not raise a dispute, or they consist of argument. Accordingly, the Court strikes plaintiff's responses that do not comply with L.R. 56.1(b)(3)(B). *See Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817-18 (7th Cir. 2004). Much of plaintiff's additional statement of facts also fails to comply with L.R. 56.1(b)(3)(C) because the paragraphs are neither short nor numbered, they consist mainly of argument and conclusory statements, and many fail to cite admissible evidence. To the extent plaintiff's additional facts fail to comply with L.R. 56.1(b)(3)(C), they are stricken. *See Hall v. Vill. of Flossmoor Police Dep't*, No. 11 C 5283, 2012 WL 6021659, at *7 (N.D. Ill. Dec. 4, 2012).

Management Reporting Disclosure Act ("LMRDA") when it mismanaged his annuity and health benefits. (*Id*. at 20-22.) At his deposition, plaintiff confirmed that he does not allege race discrimination in this case. (*Id.* at 20-21.) Stewart argues that the retaliation began when he was allegedly given the wrong information about a work assignment at the Arie Crown Theater in May 2012. (*Id*. at 30.) Stewart contends that because he was given incorrect information about the date of that job, he did not show up as expected and was subsequently charged with conduct unbecoming of a union member, which ultimately led to his expulsion from the Union in May 2013. (*Id*. at 30-31; Defs.' SOMF ¶ 59.) Stewart further argues that the retaliation continued when Craig Carlson, member of the Union's executive board, denied him an opportunity to work on August 19, 2013 by telling Stewart to call in at 3:00 p.m., the designated call-in time for non-union members or extras, rather than 10:00 a.m., the designated call-in time for union members or journeymen. (*Id*. at 26-27.)[2] Stewart asserts that the change in call-in time was the first time he was aware of his expulsion from the union. (*Id*. at 31-32.) In August 2012, Stewart filed NLRB and IDHR charges against the Union for race, age, and retaliation-based discrimination, while the Union disciplinary process for missing the assignment in May 2012 was proceeding. (*Id*. at 41-42; Defs.' Exs. A-8 and A-11.) Stewart filed a subsequent IDHR charge in February 2014 alleging denial of work beginning in August 2013 as further retaliation. (Defs.' Ex. A-2.)

Stewart had previously filed IDHR and NLRB charges against the Union in 2011 and 2012 for age and race discrimination, failure to provide representation at a grievance proceeding, and retaliation. (Stewart Dep. at 32-39; Defs.' Exs. A-3, A-6, and A-7.) Those charges were dismissed and Stewart was issued a right-to-sue letter. (*Id*.; Defs.' Ex. A-4.) Stewart filed case 13 CV 538 in this district alleging fourteen years of discrimination by the Union for age and

---

[2] There seems to be some confusion about when Stewart called in for work. At his deposition, he indicated he might have called in on August 16 or August 19 or both. (Stewart Dep. at 27-28.)

race, denial of training, disparate distribution of assignments, and retaliation for filing complaints with the NLRB and IDHR. (*Id*. at 32-33, 37; Defs.' Ex. A-5.) Judge Zagel dismissed that case in June 2013 for plaintiff's failure to comply with a court order, which Stewart did not appeal. (Defs.' SOMF ¶ 8; Stewart Dep. at 34; Defs.' Ex. B.) Stewart filed case 13 CV 7343 against the Union for failure to represent him in a wage grievance matter, for a racially-charged incident that occurred in October 2011, and for retaliation for filing charges with the NLRB. (Stewart Dep. at 38, 43-44; Defs.' Ex. A-10.) Judge Pallmeyer granted summary judgment and entered judgment in favor of the Union in September 2016. (*See* 13 CV 7343 [102] and [103].)[3]

Stewart's August 2012 NLRB and IDHR charges were dismissed, and he was granted a right-to-sue letter by the IDHR. (Stewart Dep. at 45-46; Defs.' Exs. A-9 and A-12.) While Stewart did not file a lawsuit after he received the right-to-sue letter on the August 2012 IDHR charge, he testified that the retaliation claims that were part of that charge are also part of this lawsuit. (Stewart Dep. at 46-47.) When asked whether the allegations in this lawsuit are the same as allegations in the previous suits, Stewart testified that he "made these same allegations in front of the [NLRB], the [IDHR], Judge Zagel, Judge Pallmeyer and Judge Alonso. I make these allegations across the board because they were retaliatory. They begin as discriminatory and ended up being retaliatory on a consistent and ongoing basis subsequently overlapping one another to the point that I had to continue to file charges to abate the situation, which was never abated." (*Id*. at 53.) Stewart further confirmed that the allegations are the same but he is suing under the LMRDA in this case instead of Title VII as he did in case 13 CV 538 before Judge Zagel. (*Id*. at 53-55.) Finally, Stewart confirmed that the February 2014 IDHR charge is included with claims brought in this lawsuit. (*Id.* at 57.) In addition to the retaliation claims,

---

[3] Plaintiff filed a notice of appeal in that case on October 28, 2016. (*See* 13 CV 7343 [105].)

Stewart also alleges that he did not receive annuity benefits he was entitled to from 1998 through 2001 or health benefits from 2004 to 2007. (*Id.* at 121-22, 154-55.)

In November 2015, the Court granted defendant International Alliance of Theatrical Stage Employees' motion to dismiss [78] and dismissed that defendant from the case with prejudice. The three counts in the second amended complaint [64] are pending against the Local No. 2 and the individual members of the Local No. 2's executive board.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa Cty.,* 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

## DISCUSSION

### I. Count I – Retaliation

**Title VII and ADEA Claims**

Count I of the second amended complaint generally alleges that plaintiff was discriminated against because of his race and retaliated against because of charges he filed with IDHR and NLRB. (2d Am. Compl. ¶¶ 14-15.)[4] Plaintiff alleges that because of this discrimination and retaliation, the Union knowingly assigned him short-term jobs and referred him to jobs that were the least desirable and were the furthest from his home. (*Id*. ¶ 16.) As a result of this discrimination and retaliation, plaintiff contends that he experienced emotional harm and lost wages and career opportunities. (*Id*. ¶ 19.) In his deposition, plaintiff confirmed that he brings the claims in this count pursuant to Title VII and the LMRDA. (Stewart Dep. at 58-59.)

To the extent that these general allegations are the same allegations that were brought in plaintiff's case before Judge Zagel, defendants argue that they are barred by the doctrine of res judicata. "Res judicata applies if there is (1) a final judgment on the merits in an earlier action; (2) an identity of the causes of action; and (3) an identity of parties or their privies." *Ennenga v. Starns,* 677 F.3d 766, 776 (7th Cir. 2012).

Judge Zagel dismissed case 13 CV 538 on June 28, 2013, for failure to comply with an April 5, 2013 court order. Such a dismissal operates as a dismissal on the merits pursuant to Fed. R. Civ. P. 41(b). *See Fed. Election Comm'n v. Al Salvi for Senate Comm.,* 205 F.3d 1015, 1018 (7th Cir. 2000) ("[A] federal court is granted authority to dismiss an action pursuant to Rule 41(b) for failure to comply with a prior court order."). Because the time for appeal in that case

---

[4] Plaintiff's complaint asserts that this action arises under "Section 704(a) of [T]itle 7[,] Section 4(d) of the ADEA[,] and LMRDA [§§] 101, 501, and 609." (2d Am. Compl. at 1.)

has passed, the judgment is final. *See People v. Anderson*, 48 N.E.3d 1134, 1141 (Ill. App. Ct. 2015) ("Íf a judgment is still subject to the appeal process, it cannot be given res judicata effect.").[5] Plaintiff brought case 13 CV 538 against the Theatrical Stage Employees Union Local No. 2 but not against individual executive board members of the Union, as he has done in this case. However, plaintiff's addition of Union executive board members in their individual capacities does not prevent this element of res judicata from being satisfied, particularly when, as is the case here, plaintiff does not allege that any action taken against him by the individual defendants (at least in Count I) is distinct from any action taken by the executive board or the Union itself. *Licari v. City of Chi.*, 298 F.3d 664, 667 (7th Cir. 2002). Accordingly, there is an identity of parties. Finally, there is an identity of causes of action. In 13 CV 538, plaintiff alleged that he was denied employment by the union from 1998 through 2012 because of his race and age and for retaliatory purposes. (Defs.' Ex. A-5.) In that case, plaintiff further alleged that he was harassed, denied union membership for ten years, denied proper training, and subjected to unfair job assignment distribution. (*Id.*) To the extent that the general claims in Count I, including unfair work distribution, are brought under Title VII and the ADEA, the Court finds that they are barred by the doctrine of res judicata.[6]

---

[5] Plaintiff states that he was "summoned" to Texas on May 16, 2013 "due to a family emergency" and that his sister died on May 23, 2013. (Pl.'s Resp. at 5.) Plaintiff does not indicate when he returned to Chicago; however, at least a month passed between the April Order denying plaintiff's IFP application and when he left for Texas. Plaintiff also states that he could not appeal the June dismissal "because he could not be at two places at the same time." (Pl.'s Add'l SOMF at 4.) The Court notes that plaintiff is an electronic filer who has filed three lawsuits in this district and currently has one on appeal—16-3810—in which he is proceeding *pro se*.

[6] Count I contains general allegations of discrimination and retaliation. The Court will address specific incidents of alleged retaliation in its discussion of Count II.

**LMRDA Claims**[7]

To the extent that plaintiff brings the claims in Count I pursuant to the LMRDA, 29 U.S.C. § 411, the Court finds that such claims are untimely.[8] The LMRDA does not enumerate a statute of limitations, so courts are authorized to apply the "most closely analogous statute of limitations from the forum state." *Stevens v. Nw. Ind. Dist. Council, United Bhd. of Carpenters,* 20 F.3d 720, 723 (7th Cir. 1994). Defendants argue that the Court should follow *Stevens* and apply Illinois's two-year limitation for tort actions. Plaintiff does not respond to defendants' timeliness argument. Accordingly, the Court will apply Illinois's two-year statute of limitations—735 ILCS 5/13-202. *See Reed v. United Transp. Union,* 488 U.S. 319, 327 (1989) ("Since § 101(a)(2) [of the LMRDA] has evident similarities to § 1983, which prohibits the infringement of First Amendment rights by persons acting under color of state law, it is apparent that § 101(a)(2) actions also are analogous to state personal injury claims, and under our usual borrowing rule would take their statutes of limitations."); *see also Clift v. Int'l Union UAW,* 881 F.2d 408, 411 (7th Cir. 1989) ("[A] state's limitations period for a personal injury action also provides the appropriate borrowed limitations period for an employee's equal protection claim under § 101(a)(1) of the LMRDA."). In Count I of his complaint, plaintiff alleges that the retaliation against him occurred after he began speaking out against the Union in June 2009.

---

[7] The Court analyzes the claims made in Count I under 29 U.S.C. § 411. The other statutes plaintiff cites—29 U.S.C. § 501 and 29 U.S.C. § 529—address the fiduciary responsibility of labor organizations and prohibit retaliation for exercising LMRDA rights. Neither of these statutes are applicable to the claims plaintiff raises in Count I.

[8] Though plaintiff's claims in Count I appear to relabel Title VII and ADEA claims brought in 13 CV 538 as LMRDA claims, the doctrine of collateral estoppel does not apply because plaintiff did not have an opportunity to "actually litigate" the issues in his prior case. *See Reed v. Ill.,* 808 F.3d 1103, 1107 (7th Cir. 2015) (In order for collateral estoppel to apply, "the person to be bound must have actually litigated the issue."). The dismissal in 13 CV 538 was for failure to comply with a court order and occurred early in the case. While that dismissal operates as a judgment on the merits for purposes of res judicata, no issues were actually litigated and plaintiff's LMRDA claims are not barred by collateral estoppel. *See Martin v. Akerson,* No. 08 C 3812, 2009 WL 2848897, at *6 (N.D. Ill. Aug. 31, 2009) ("[C]ollateral estoppel is inapplicable because a penalty dismissal does not actually adjudicate any issues.").

Because plaintiff does not specify, at least in this Count, specific instances of retaliation or when they occurred, the Court is left to presume they took place soon after plaintiff's criticism in June 2009.[9] Because this lawsuit was filed in September 2014, more than five years after plaintiff's critical remarks and any subsequent retaliation, those claims are time-barred. Accordingly, summary judgment is granted to defendants as to Count I.

## II. Count II – Retaliation Pursuant to LMRDA and Fair Duty of Representation Pursuant to Labor Management Relations Act ("LMRA")[10]

### LMRDA Claims[11]

Plaintiff raises several claims in Count II and describes specific instances of retaliation. The Court will not address the claims in Count II that relate to the International Alliance of Theatrical Stage Employees, AFL-CIO ("IATSE") because those claims have been dismissed. (*See* [78].)[12] Further, many of claims against the Local No. 2 and the members of the executive board are time barred. The only timely claims, those that fall within the two-year statute of limitations, are plaintiff's allegation that he was improperly expelled from the union in May 2013 and that he was denied a work assignment in August 2013.[13]

#### May 2013 Expulsion

Plaintiff's expulsion from the Union stemmed from a failure to show up or "call off" for a work assignment at the Arie Crown Theatre in May 2012. (Defs.' SOMF ¶¶ 29-59; Stewart Dep. at 67-115.) Plaintiff called the Union on the morning of May 23, 2012 for a work referral.

---

[9] *See* n.6.

[10] Parties cannot amend their complaints through arguments made in response to a motion for summary judgment. *Shanahan v. City of Chi.,* 82 F.3d 776, 781 (7th Cir. 1996). Accordingly, the Court relies on plaintiff's second amended complaint, in which he states that Count II arises under the LMRDA, not Title VII, the ADEA, and ADA, as portions of plaintiff's response brief seem to indicate. (2d. Am. Compl. ¶ 20.)

[11] The Court analyzes plaintiff's LMRDA claims in this count under 29 U.S.C. § 411. While plaintiff also asserts that the claims in this count arise under 29 U.S.C. § 501, the Court disagrees. That section of the code addresses the fiduciary responsibility of officers of labor organizations and will be addressed below.

[12] The claims against IATSE are in ¶¶ 26-37 of the Second Amended Complaint.

[13] Plaintiff's complaint was filed on September 25, 2014. Any allegations of retaliation made pursuant to 29 U.S.C. § 411 that predate September 25, 2012 are untimely.

(Defs.' SOMF ¶ 29.) According to plaintiff, he was told the work assignment he accepted was for Saturday, May 26, 2012 at 6:30 a.m. at the Arie Crown. (Defs.' SOMF ¶ 30; Stewart Dep. at 69.) Plaintiff says he recited this information to the person from the Union who had given him the job details, and no corrections were made. (Stewart Dep. at 69.) Plaintiff did not show up or "call off" for the work assignment at the Arie Crown, which was actually for May 24, 2012. (Defs.' SOMF ¶¶ 31, 35; Stewart Dep. at 67.) Plaintiff maintains he was misinformed about the job details. (Stewart Dep. at 67.) The Union has determined that a member's failure to show up or "call off" for a work referral is conduct unbecoming a member in violation of Article I, Section 2 of the Union's bylaws, and the Union routinely disciplines members for such violations. (Defs.' SOMF ¶¶ 33-34.)

On June 7, 2012, the Union mailed plaintiff a notice that charges had been filed against him for failure to show up or "call off" for work at the Arie Crown on May 24, 2012 and that a hearing on the matter had been set for the July 2, 2012 Executive Board meeting. (*Id*. ¶ 35.) Before the July 2 hearing, plaintiff requested that the Union provide him with representation. (*Id*. ¶ 36.) In a letter dated June 21, 2012, the Union informed plaintiff that he would have the opportunity to present his defense at the July 2 hearing and that he had a right to designate another union member in good standing to appear on his behalf, but the Union does not appoint union members to appear on behalf of other union members. (Defs.' Ex. A-16; Stewart Dep. at 83.) Plaintiff asked two union members to represent him, but they declined. (Stewart Dep. at 83-85.) Plaintiff also asserts he was never provided a list of union members who were in good standing and had no way of knowing whether a member was in good standing. (*Id*. at 83; Pl.'s Resp. to Defs.' SOMF ¶ 36.) Plaintiff attended the July 2, 2012 hearing and claimed that the Union violated his *Weingarten* right to not participate in any activity that would result in

discipline without the presence of a union steward, representative, or attorney. (Defs.' SOMF ¶ 39.)[14] Because he was not provided with representation, plaintiff chose not to participate in the hearing on July 2, 2012. (Stewart Dep. at 88-89.) At the hearing, Executive Board member Tom Cleary gave plaintiff the opportunity to plead guilty to the charge of conduct unbecoming a member. (Defs.' SOMF ¶ 44; Stewart Dep. at 89-90.) Plaintiff did not plead guilty because he did not have representation and so he did nothing. (Stewart Dep. at 90.)

In a letter dated August 2, 2012, the Union informed plaintiff that his trial was scheduled for August 21, 2012. (Defs.' SOMF ¶ 45.) Plaintiff responded to that letter by stating that he would not participate in the trial without representation. (*Id*. ¶ 46.) Plaintiff did not appear at the trial, was tried in absentia, and found guilty. (*Id*. ¶ 47.) Plaintiff was informed on August 31, 2012 (via letter dated August 28, 2012) that he had been found guilty of conduct unbecoming a member for the incident on May 24, 2012. (*Id*. ¶¶ 47-48.) As of September 14, 2012, plaintiff was aware that he had been fined $2,679 for being found guilty. (*Id*. ¶ 50.) Plaintiff did not appeal the guilty finding. (Stewart Dep. at 101, 107).

Starting in September 2012, plaintiff received monthly statements from the Union showing that he owed $2,679. (*Id.* at 107-08.) In a certified letter dated May 1, 2013, the Union informed plaintiff that he had failed to pay the fine for six months and that a member in default for six months or more would be automatically expelled. (*Id*. at 108; Defs.' Ex. A-28.) The letter further explained that if plaintiff did not pay the fine by May 13, 2013, he would be automatically expelled. (*Id*. at 109.) Plaintiff did not pay the fine and had no intention of paying the fine. (*Id*.) Plaintiff was expelled from the Union effective May 13, 2013. (Defs.' SOMF ¶

---

[14] "Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, requires employers that seek to conduct disciplinary interviews of employees to permit the employees to invite representatives of their union to the interviews." *Commc'n Workers of Am., Local 5008 v. NLRB,* 784 F.2d 847, 848 (7th Cir. 1986) (citing *NLRB v. J. Weingarten*, *Inc.,* 420 U.S. 251 (1975)).

59.) Plaintiff was expelled in accordance with Article 10 of the Union's constitution and bylaws, and the Union had expelled several other members, before and after plaintiff, for failure to pay fines. (*Id*. ¶¶ 52, 62.)

According to the LMRDA:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such a member has been (A) served with specific written charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).

There is no evidence before the Court that plaintiff's expulsion violated his rights under the LMRDA. Plaintiff was served with specific written charges via letter on June 7, 2012, and he was given an opportunity to prepare a defense (which he did not do) for both the July 2, 2012 hearing and the August 21, 2012 trial. The fact that plaintiff was not appointed a representative does not affect the fairness of the hearing or trial. *See Curtis v. Int'l All. of Theatrical Stage Emps.,* 687 F.2d 1024, 1028 (7th Cir. 1982) ("Congress did not expressly include a right to counsel in the Landrum-Griffin Act . . . and intended disciplinary proceedings to remain primarily under local union control[.]"). The union in *Curtis,* like the Union here, allowed members in good standing to serve as representatives in internal disciplinary proceedings. *Id*. To afford a full and fair hearing, the charging party must present some evidence to support the charges. *Kauffman v. IBEW, Local Union No. 461,* 124 F. Supp. 2d 1127, 1129-30 (N.D. Ill. 2000). To meet "this minimal standard," there must be some relevant evidence in the record "to support the conclusion reached by the disciplinary board." *Id.* at 1130. Such evidence exists. It is undisputed that plaintiff failed to show up or "call off" for the job he had taken for May 24, 2012. Because plaintiff refused to present his defense (that he was purposely given the wrong

job date) plaintiff's guilty finding was justified. Moreover, plaintiff was not expelled for being found guilty at the trial. He was expelled only after failing for six months to pay the fine imposed upon him, a sanction regularly imposed by the Union. Accordingly, no reasonable jury could find that the Union violated plaintiff's LMRDA rights with respect to plaintiff's dismissal from the Union.

August 2013 Denial of Work

Plaintiff argues that he was denied work on August 13, 2013. (2d. Am. Compl. ¶ 40; Stewart Dep. 119.) Defendants argue that summary judgment should be granted in their favor for this alleged denial of work because plaintiff was not a union member at the time. "The LMRDA defines 'member' and 'member in good standing' as: '[A]ny person who has fulfilled the requirements for membership . . . , and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.'" *Weinbender v. Local 2, Int'l All. of Theatrical Stage Emps.,* No. 06 C 393, 2008 WL 4425379, at *4 (N.D. Ill. Sept. 23, 2008) (quoting 29 U.S.C. § 402(o)). It is undisputed that plaintiff was expelled from the union on May 13, 2013. Accordingly, plaintiff does not have standing under the LMRDA to sue for denial of work that occurred after his expulsion. *See Newell v. State of Wis. Teamsters Joint Council,* No. 05-C-552, 2007 WL 484594, at *7 (E.D. Wis. Feb. 8, 2007) (citing *Hooks v. Truck Drivers, Local 100,* 39 F. App'x. 309 (6th Cir. 2002) (case then before the court was distinguishable from cases defendant cited because plaintiffs were union members at the time of the alleged violations and only withdrew their memberships after the violations occurred)).

**LMRA Claim**

Plaintiff argues that in addition to the two retaliatory incidents discussed above, the Union breached its duty of fair representation by refusing to provide plaintiff with representation in grievance procedures. (2d. Am. Compl. ¶ 41.) Plaintiff admits that he has had no contact with the Union since August 2013. (Stewart Dep. at 119.) Accordingly, defendants argue that this claim is barred by the LMRA's six-month statute of limitations. *See Chapple v. Nat'l Starch & Chem. Co. & Oil,* 178 F.3d 501, 505 (7th Cir. 1999). The Court agrees. No union grievance procedures occurred between March 2014 and September 2014 that would constitute a timely claim under the LMRA. It appears that the grievance procedures for which plaintiff argues he was unfairly denied representation occurred on July 2, 2012 and August 21, 2012. (Defs.' SOMF ¶¶ 36-41, 45-47; Stewart Dep. at 86-88, 92-94.) The statute of limitations for bringing a cause of action for breaching the duty of fair representation under the LMRA for these two grievances was January 2, 2013 and February 21, 2013 respectively. Plaintiff's September 2014 lawsuit is more than a year past those deadlines and therefore is untimely. Accordingly, summary judgment is granted in favor of defendants on the LMRA claims.

### III. Count III – Breach of Fiduciary Duty Pursuant to the LMRDA

Count III is based on the allegations that the Union's Secretary-Treasurer, Tom Cleary, misappropriated plaintiff's annuity from 1998 to 2000 and that the Union denied plaintiff health and welfare benefits from 2004 to 2007. (2d. Am. Compl. ¶¶ 43-44; Stewart Dep. at 16, 120.)

**Annuity Fund Contributions**

Plaintiff asserts that he discovered in 2014 that his annuity fund had not been contributed to from 1998 to 2001. (Pl.'s Mem. at 7-8; Stewart Dep. at 152.) Plaintiff submitted an exhibit of a letter he sent to the Annuity Plan Administrator at Benefits Management Group in June 2014

regarding his annuity contributions from 1998 to 2000. (Pl.'s Ex. B-6.) Attached to that letter is an annual statement from Benefits Management Group for 2014, which reflects an opening balance of $3,606.33 in plaintiff's account in 2001. (*Id.*)[15] Defendants submitted an annual statement from Benefits Management Group for 2015, which reflects that plaintiff made contributions to the annuity plan in 2000 and his account had a closing balance of $3,606.33 that year. (Defs.' Ex. A-31.) That same statement reflects that plaintiff made $2,220.36 in contributions in 2001 and his account had a closing balance of $5,834.85 that year. (*Id*.) Accordingly, it appears that only contributions made in 1998 and 1999 are unaccounted for. Defendants explain that contributions to the annuity plan were combined for 1999 and 2000. (Defs.' SOMF ¶ 71.) Defendants assert that in 1999, $1,210.19 was contributed to the plan on plaintiff's behalf and that in 2000, $2,513.52 was contributed to the plan on plaintiff's behalf. (Defs.' Ex. C ¶¶ 17-18; Ex. F.) Finally, defendants demonstrate that the contributions to the annuity plan for 1999 were added to the contributions for 2000 and the total of $3,606.33 for those two years (minus $117.38 for administrative expenses) is reflected in plaintiff's annuity plan statement for the year 2000. (Defs.' Ex. C ¶¶ 18-19; Ex. A-31.) Plaintiff started with the Union in September or October 1998 and "didn't work very much that year." (Stewart Dep. at 122.) Later in his deposition, plaintiff testified that his earnings in 1998 "[were] insignificant" because he did not start working for the Union until late in the year and he "wouldn't have gotten that much work in the beginning" and so he "[doesn't] even count [19]98." (*Id*. at 132.)[16]

Plaintiff goes on to assert that he was never informed that his contributions to the annuity fund would be commingled and the "intentional comingling [sic] of 1998, 1999 and 2000 annuity funds" is a breach of the Union's fiduciary duty. (Pl.'s Mem. at 10.) He further argues

---

[15] This document is the same as Defs.' Ex. A-34.
[16] According to Social Security records plaintiff submitted, he earned $5,713 in 1998. (Pl.'s Ex. B-4.) The source of that income is unclear.

that he was misled about the Union's contribution rate to the annuity fund and disputes the earnings the Union attributes to him for 1999 and 2000 because they differ from the income reported on his Social Security records for those two years. (Pl.'s Resp. to Defs.' SOMF ¶¶ 70-73; Pl.'s Ex. B-4.)[17] The Union argues that during the years in question, plaintiff assumed that 10 percent of his wages should have been contributed to the annuity plan, but during the relevant time frame, the Union's collective bargaining agreements did not require all employers to contribute to the annuity plan, and those that did so contributed at a varied rate between 3 percent and 10 percent of an employee's earnings. (Defs.' Mem. at 33; Defs.' SOMF ¶ 69.) Defendants further contend that 29 U.S.C. § 501 provides for a cause of action against an officer or agent of a union and not against a union itself and plaintiff did not properly notify the Union of his complaint nor did he obtain leave of the court to file suit as required by § 501.

"Section 501(b) conditions a member's right to sue on a prior request for action, the refusal or failure of the union to act, and leave granted for good cause." *Kinslow v. Briscoe,* No. 92 C 4830, 1993 WL 72336, at * 2 (N.D. Ill. Mar. 12, 1993). It is undisputed that plaintiff did not inquire with anyone at the Union about the alleged misappropriation of annuity fund contributions. (Defs.' SOMF ¶ 68; Stewart Dep. at 152-54.) Rather, plaintiff wrote a letter to Laura Swinehart, the annuity plan administrator at Benefits Management Group, requesting an update on his inquiry for the "unaccounted" annuity contributions for 1998 to 2000. (Pl.'s Ex. B-6.) Plaintiff testified that he did not receive a response and did not reach out to anyone at the Union because his inquiries about his rights, benefits, and earnings were "ignored and retaliated against by local management." (Stewart Dep. at 154; Pl.'s Resp. to Defs.' SOMF ¶ 67.) Although "futility is recognized as an excuse for failure to demand action in the Seventh

---

[17] Plaintiff asserts that the Union under-recorded his income by approximately $1,700 in 1999 and approximately $1,800 in 2000. (Pl.'s Resp. to Defs.' SOMF ¶¶ 71-72; Pl.'s Ex. B-4.)

Circuit," *Kinslow,* 1993 WL 72336, at *3 (citing *McNamara v. Johnston,* 522 F.2d 1157, 1162-63 (7th Cir. 1975)), § 501(b) requires plaintiff to "obtain leave of court upon good cause shown in order to proceed" with a lawsuit. *Frantz v. Sheet Metal Workers Union Local No. 73,* 470 F. Supp. 223, 228 (N.D. Ill. 1979). "Where the defendant 'can establish, by undisputed affidavit, facts which demonstrate plaintiff is not a member thus lacking standing under LMRDA . . . or that the action is outlawed by the statute of limitations, or cannot proceed . . . on principles of res judicata or collateral estoppel,' then denial of the application for good cause is warranted." *Kinslow*, 1993 WL 72336, at *3 (quoting *Frantz,* 470 F. Supp. at 228). It is undisputed that plaintiff was expelled from the union effective May 13, 2013, over a year before he raised the annuity fund contribution issue both with the fund administrator (via the June 2014 letter) and with the Union (via the September 2014 lawsuit).[18] Accordingly, the Court finds that plaintiff has not shown good cause to proceed with the lawsuit against Mr. Cleary or any other member of the Union's executive board, and summary judgment is granted in favor of defendants on this issue.[19]

**Health and Welfare Benefits**

During his deposition, plaintiff admitted he was aware that he was denied health and welfare benefits between 2004 and 2007. (Stewart Dep. at 16-17.) In his additional statement of material facts, plaintiff confirms that "around 2006, [he] was notified that he was being denied health benefit[s]." (Pl.'s Add'l SOMF at 39.)[20] Plaintiff also asserts that his insurance was not restored after 2007 and that he "inquired in 2009 as to why." (*Id*.) Finally, plaintiff states that he

---

[18] Plaintiff does not dispute the fact that he was expelled, but rather the reason for and process of the expulsion. (Pl.'s Resp. to Defs.' SOMF ¶ 58.)
[19] Defendants correctly point out that § 501(b) does not provide a cause of action against a union, but only for an action against an "officer, agent, shop steward, or representative of such an organization." *See Frantz*, 470 F. Supp. at 226 (denying leave to file a lawsuit against a union under § 501(b)).
[20] Plaintiff includes as an exhibit a letter from the Union dated January 29, 2007 informing plaintiff that his medical insurance had expired due to a balance in excess of $3,000. (Pl.'s Ex. B-2.)

discovered that he did not have health insurance coverage from 2007 to 2013 when he received a $14,000 bill at some unidentified date, but also asserts that "he was notified he was eligible in 2011 for coverage." (*Id.* at 40.) Defendants argue that in Illinois, a five-year statute of limitations applies to breach of fiduciary duty claims brought under 29 U.S.C. § 501. In his statement of additional facts, plaintiff argues that the denial of health coverage is "not covered within the five year statute of limitation and is thereby a LMRDA violation" because he inquired about his health benefits in 2009 and "Craig Carlson and Tom Cleary refused to explain . . . but targeted plaintiff for further discrimination and retaliation for his inquiry." (*Id.*)

The Court agrees that the five-year statute of limitations applies. *See Waldron v. Dugan,* No. 07 C 286, 2007 WL 4365358, at *3-4 (N.D. Ill. Dec. 13, 2007) (applying Illinois' five-year "general catch-all statute of limitations" to a claim under 29 U.S.C. § 501).[21] While it is not clear for what periods plaintiff did not have health coverage or why, plaintiff admits that he was aware of the lack of benefits in 2006 and again in 2009 when he asked union leadership about the denial of benefits. Plaintiff submitted several letters he sent to Cleary and Carlson as exhibits, but none of those letters reflect plaintiff's inquiry about health coverage. In one exhibit, plaintiff indicates that he inquired about the denial of medical benefits on June 6, 2009. (Pl.'s Ex. B-12.) It is clear that plaintiff was aware of his lack of benefits in 2006 and that in June 2009 those benefits had not been reinstated. A timely claim pursuant to 29 U.S.C. § 501 was required to have been filed, at the latest, by June 2014. This case was not. Therefore, summary judgment is granted in favor of defendants on this claim.

---

[21] *Waldron* applied 735 ILCS 5/13-205, which indicates that all civil actions not otherwise provided for shall be commenced within five years after the cause of action accrued.

## CONCLUSION

For the reasons set forth above, summary judgment is granted as to all defendants on all of plaintiff's remaining claims.

**SO ORDERED.**   **ENTERED:  November 22, 2016**

_____
**JORGE L. ALONSO
United States District Judge**